IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **Michael R. Adair, an individual,**<br><br>**Plaintiff,**<br><br>vs.<br><br>**Boat Dock Innovations, LLC, a Georgia limited liability company,** *et als.*<br><br>**Defendants.** | Civil Action No.:<br><br>1:12-cv-01930-LMM |

**PLAINTIFF'S CLAIM CONSTRUCTION BRIEF
PURSUANT TO LPR 6.5**

**COMES NOW** Plaintiff Michael R. Adair ("Adair") by his undersigned attorney and pursuant to LPR 6.5 submits his Claim Construction Brief, as follows:

**I.     INTRODUCTION**

LPR 6.5(a) states, "Not later than thirty (30) days after serving and filing the Joint Claim Construction Statement, each party shall serve and file an opening brief and any evidence supporting its claim construction." While the parties did not serve and file a "Joint Claim Construction Statement" until April 8, 2015 [Dkt. No. 67], such filing was a mere formality, as the parties had each previously, and

1

independently, filed respective "Claim Construction Statements", *i.e., Ex Parte* Claim Construction Statement filed by Michael R. Adair [62] and Claim Construction Statement of Defendants [63], each filed on March 10, 2015, whereby the filing of the Joint Claim Construction Statement [67] on April 8, 2015 was a mere consolidation of the foregoing filings [62] and [63]. Accordingly, the parties' Opening Claim Construction Briefs are due by **April 9, 2015**.

## II.  BACKGROUND

U.S. Patent No. 7,494,792 as Reexamined (the "'792 Patent"), a copy of which is attached as Exhibit 1, entitled "Aquatic Ladder Adapted for Marine Applications" is directed to a novel ladder that was designed to facilitate ingress to, and egress from, the water with respect to a boat or dock. Unlike any of the marine ladders heretofore known, the invention described in the '792 Patent provides the first stair-like approach to entering and leaving the water from a boat or dock.

In order to accomplish the foregoing, the aquatic ladder of the invention uses relatively wide, and relatively deep steps, rather than the "rungs" of the previously known ladders. An important feature of the invention is that the steps slope downward and outward, at a stair-like angle, from the dock or boat to which the ladder is attached, whereby use of the inventive ladder is just like going up a stairway, rather than climbing a ladder.

The prior art, at the time that the invention was conceived and reduced to practice included ladders that were of a type that hung down from the dock or boat to which they were affixed in a substantially vertical direction, thereby making their use extremely difficult, if not impossible, when the user was not in top physical condition.  In fact, boat ladders of the prior art, while initially substantially vertical, would actually hang at a "negative" angle when anyone was climbing them (where the term "negative" is intended to relate to an angle that is greater than 90 degrees from the angle of a horizontal dock or swim platform). Consequently, older users, pets, and those with physical impairments found climbing such ladders to be difficult, if not impossible.

The present invention, on the other hand, provided, for the first time, an aquatic ladder that older people, physically impaired people, and even pets could easily climb.  The discovery made by the inventor, Michael Adair, was that it was not sufficient to merely make a ladder having a sloped portion for the inclusion of steps, but that in order for such a ladder to be used in a marine application (*i.e.,* on a dock or boat dock) it was an important feature of the invention to have a way to limit the downward travel of the sloped portion of the ladder, so that the sloped portion of the ladder*, i.e.,* the portion of the ladder that included the "steps" would slope downward and outward, in a stair-like manner.  In order to accomplish that result, Mr. Adair recognized that while gravity would normally cause a ladder

having a sloped portion to drop down (*i.e.,* to try to become vertical), a configuration was needed for the inventive ladder that prevented its sloped portion from doing that.

Thus, while sloped aquatic ladders admittedly existed prior to Mr. Adair's invention, they relied upon the bottom of their sloped portion contacting the bottom of a pool to maintain such slope. Otherwise, their ability to remain sloped, irrespective of their "out-of-water" appearance, was severely compromised.

The discovery made by Mr. Adair was that the downward slope of an aquatic ladder was determined by two things – namely, (a) the slope built into the ladder at the time of its manufacture; and (b) the use of some "limiting means" to prevent the ladder from angling down into the water. It was the latter item that had previously eluded others.

In particular, the ladder of the '792 Patent includes a hinged portion that allows the ladder to be lifted from the water or lowered into the water, and it includes a "contact point" that is intended to make contact with the dock or boat to which the ladder is mounted that limits the downward angle that the sloped portion of the ladder can attain when it is lowered into the water.

In view of the foregoing, the '792 Patent was initially issued. However, based on prior art cited by the Defendants, the U.S. Patent and Trademark Office ("PTO") agreed to reexamine the patent, and it did so. During such reexamination,

Claim 1 of the '792 Patent was amended, with the amendment merely pointing out that

> … said contact between said vertical space support members against a dock or boat on which said ladder is mounted limits downward movement of said vertical spaced support members, and together with the angle at which said vertical spaced support members are attached to a pair of spaced sloped step support member[s] determine the angle between said pair of spaced sloped support step support members and said dock or boat on which said ladder is mounted … (Claim 1, '794 Patent, as reexamined)

Thus, following reexamination, in which all of the prior art known to the Defendants was made available to the PTO, the patentability of the '794 Patent was confirmed with the minor inclusion of the foregoing language for the purpose of pointing out that the angle of the sloped portion of the ladder, *i.e.,* the portion including the steps, would have an angle determined by (a) the angle at which their supporting members were attached (done during manufacture); and (b) the angle based on contact between the ladder and a point on the dock or boat on which said ladder is mounted.

### III. CLAIM CONSTRUCTION LEGAL STANDARDS

Words of a claim "are generally given their ordinary and customary meaning." *Phillips*, 415 F.3d at 1312 (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)).  In some cases, "the ordinary meaning of claim language as understood by a person of skill in the art may be readily

5

apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Phillips*, 415 F.3d at 1314.

In most cases, ascertaining the ordinary and customary meaning of the claims requires the court to consider "… those sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean." *Phillips*, 415 F.3d at 1314 (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Systems, Inc*,, 381 F.3d 1111, 1116 (Fed. Cir. 2004)).  Such sources include the intrinsic record, *viz*., the claims, the specification, and prosecution history. *Id*. As stated in *Phillips*, "… the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." 415 F.3d at 1313.

Although the specification is highly relevant in determining the meaning of a claim term, courts must be careful to avoid "… the danger of reading limitations from the specification into the claim." *Phillips*, 415 F.3d at 1323.  In *Phillips*, the Federal Circuit acknowledged that the distinction between reading claims in light of the specification and importing limitations from the specification into the claim can be difficult and stated that "… although the specification often describes very specific embodiments of the invention, we have repeatedly warned against

confining the claims to those embodiments." 415 F.3d at 1323. To avoid importing limitations from the specification into the claims, the Federal Circuit noted that it is important to remember that the purpose of the specification is to teach and enable those skilled in the art to make and use the invention and to provide a best mode for doing so, not to necessarily restrict the invention to specific examples provided in the specification. *Id*. According to the Federal Circuit, the "… manner in which the patentee uses a term within the specification and claims usually will make the distinction apparent." *Id*.

Finally, although intrinsic evidence is most informative in determining the claims' customary and ordinary meaning, a court may use extrinsic evidence, which "…consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." *Phillips*, 415 F.3d at 1317 (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 980 (Fed. Cir. 1995) (*en banc*)).

It is an established tenet of patent law that claims define the invention, and limitations from the specification should not be imported into the claims. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1323 (Fed. Cir. 2005) (*en banc*).

**IV.   CLAIM CONSTRUCTION IN THE PRESENT CASE**
    **A.   Agreed Upon Terminology**

Initially, the parties have agreed that the following claim terms shall have their plain and ordinary meanings:

1. "support members"

2. "sloped step support members"

3. "horizontally spaced"

4. "relatively deep and relatively wide"

5. "front and rear members"

B. **Terms and Phrases on Which the Parties Disagree**

1. "**vertical spaced support members having upper and lower portions**"

It is Plaintiff's position that the foregoing phrase refers to those parts of the ladder that are intended to be connected to both upper handrails and lower rung supports. Support for Plaintiff's position is found in the '792 Patent at Col. 4, lines 22-26 where reference is made to Reference Nos. 20, 22 and FIG. 1.

2. "**upper portion formed as an inverted "U" shape and terminating at a distal upper end**"

It is Plaintiff's position that the foregoing phrase refers to those parts of the ladder that are intended to be used as handrails. It is also Plaintiff's position that the term "U" shape should be construed liberally as the intent of the phrase is

8

merely to provide a description for the handrail portion of the ladder.  Support for Plaintiff's position is found at Col. 4, lines 26-29, referring to Ref. Nos. 26, 28 and FIG. 1.

    3.    **"proximal lower ends extending substantially lower than the distal upper ends"**

It is Plaintiff's position that the foregoing phrase refers to those portions of the support members that are vertically lower than the upper handrail portions.  Support for Plaintiff's position is found in FIG. 1, wherein the lower ends of the vertical support members 20, 22 extend lower than the top of the dock 24.

    4.    **"contact between said vertical spaced support members against a dock or boat … limits downward movement of said vertical spaced support members"**

As set forth above, it is Plaintiff's position that the foregoing phrase refers to the way that the invention limits the downward slope of the ladder.  Support for Plaintiff's position is found in FIG. 1, showing support members 20, 22 contacting the side of the dock 24.  Support is also found in Col. 4, lines 22-26.

    5.    **"and together with the angle at which said vertical spaced support members are attached to a pair of spaced slope step support member"**

It is Plaintiff's position that the foregoing phrase refers to the angle between

9

the vertical support members and the sloped step support members.  Support for Plaintiff's position is found in FIG. 1 wherein the angle is shown between the attachment of the vertical supports 20, 22 to the respective step support members 42 (having front and rear members 46, 48) and 44 (having front and rear members 50, 52).  Further support appears at Col. 4, lines 42-49 of the specification.

> 6. "wherein said contact between said vertical spaced support members against a dock or boat on which said ladder is mounted limits downward movement of said vertical spaced support members, and together with the angle at which said vertical spaced support members are attached to a pair of spaced slope step support member determine the angle between said pair of space sloped step support members and said dock or boat"

It is Plaintiff's position that the configuration of the components determines the angle that the sloped step support members extends such that the steps are configured like a stairway.  Support for Plaintiff's position is found in FIG. 1 wherein the angle is shown between the attachment of the vertical supports 20, 22 to the respective step support members 42 (having front and rear members 46, 48) and 44 (having front and rear members 50, 52).  Further support is also found at Col. 4, lines 42-49.

> 7. "rigidly affixed"

It is Plaintiff's position that this term means that the parts are not intended to

separate in the normal use of the ladder.  Support for Plaintiff's position is found at Col. 4, lines 13-22, wherein the brackets 14, 16 of the preferred embodiment shown in FIG. 1 are described as being bolted to the vertical support members while allowing the parts to be hinged in order to raise the ladder out of the water (as shown in shadow in FIG. 1).

8.     **"contact between said vertical spaced support members against a dock or boat on which said ladder is mounted"**

It is Plaintiff's position that this phrase refers to that part, or those parts, of the support members that are intended to lie against a dock or boat on which the ladder is mounted, whereby further downward movement of the sloped support members is prevented, *i.e.*, the part or parts that prevent the "sloped" supports from dropping down further than intended based on the angle to which the sloped support members are attached to them.  Support for Plaintiff's position is found in FIG. 1 wherein the angle is shown between the attachment of the vertical supports 20, 22 to the respective step support members 42 (having front and rear members 46, 48) and 44 (having front and rear members 50, 52).  Further support for Plaintiff's position is found in Col. 4, at lines 42-49.

## V.     Conclusion

The claim construction set out above, represents the only reasonable construction of the claims, particularly in view of the fact that the '792 Patent was reexamined and found to be patentable over all of the prior art known to the Defendants. As such, the '792 Patent is entitled, not only to a presumption of validity, but also to a presumption that it is valid over any art previously known to the PTO as well as any prior art located by the Defendants. As such, the claims of the '792 Patent should be construed to cover any ladder having a step-like configuration wherein the angle of the stepped portion is established by both its manufacture and by its contact with the dock or boat on which it is mounted.

Respectfully submitted,

Dated: __April 9, 2015__        By:_ s/ Sanford J. Asman_____
                                Sanford J. Asman
                                Georgia Bar No. 026118
                                Attorney for Plaintiff
                                Michael R. Adair

Law Office of Sanford J. Asman
570 Vinington Court
Atlanta, Georgia  30350
Phone   :   (770) 391-0215
E-mail  :   sandy@asman.com

## CERTIFICATE OF SERVICE

I certify that on the date set forth below, I electronically filed the attached:

**PLAINTIFF'S CLAIM CONSTRUCTION BRIEF
PURSUANT TO LPR 6.5**

using the CM/ECF system.


Dated: __April 9, 2015__          By: _s/ Sanford J. Asman_____
                                                               Sanford J. Asman
                                                               Georgia Bar No. 026118
                                                               Attorney for Plaintiff
                                                               Michael R. Adair

Law Office of Sanford J. Asman
570 Vinington Court
Atlanta, Georgia  30350
Phone   :   (770) 391-0215
E-mail   :   sandy@asman.com