# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

|  |  |
|---|---|
| ) | |
| ) | |
| MICHAEL R. ADAIR, ) | |
| ) | |
| Plaintiff and Counterclaim-Defendant, ) | |
| ) | CIVIL ACTION NO: |
| v. ) | 1:12-CV-01930-LMM |
| ) | |
| BOAT DOCK INNOVATIONS, LLC, ) | JURY TRIAL DEMANDED |
| *et al.* ) | |
| ) | |
| Defendants and Counterclaim-Plaintiffs. ) | |
| ) | |

## <u>DEFENDANTS' OPENING CLAIM CONSTRUCTION BRIEF</u>

# TABLE OF CONTENTS

INTRODUCTION ....................................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND .............................................2

LEGAL PRINCIPLES ..........................................................................................8

ARGUMENT .......................................................................................................10

    I.    Each "Vertical Spaced Support Member" is Comprised of a Single Continuous Component...........................................................11

    II.    "'U' Shape" Means Precisely the Shape Illustrated by the Letter "U."..................................................................................................15

    III.    The "Limits Downward Movement of the Vertical Spaced Support Members" Term Refers to the Vertical Spaced Support Members as a Whole, Not Just Their Lower Portions. ......................16

    IV.    The Term "Rigidly Affixed" Refers to Two Separate Components that are Immovably Attached or Immovably Fastened Together. ...............................................................................19

    V.    The Terms "Sloped Step Support Members" and "Front and Rear Members" Do Not Require Construction.............................................22

    VI.    The Terms "Horizontally Spaced" and "Relatively Deep and Relatively Wide" are Indefinite Because Their Scope Cannot Be Determined with Reasonable Certainty. ...............................................22

    VII.    Plaintiff's Proposal to Construe "Aquatic Ladder Adapted for Marine Applications" Should Be Denied Because This Language Is Not Used in Any Asserted Claim. ...................................................25

CONCLUSION ....................................................................................................25

# TABLE OF AUTHORITIES

## Cases

*3M Co. v. Avery Dennison Corp.*,
  2012 U.S. Dist. LEXIS 39895 (D. Minn. Mar. 22, 2012) ..................... 14, 18, 22

*Biosig Instruments, Inc. v. Nautilus, Inc.*,
  783 F.3d 1374 (Fed. Cir. 2015).........................................................................23

*Cummins-Allison Corp. v. Glory Ltd.*,
  457 F. Supp. 2d 843 (N.D. Ill. 2006) ...................................................................9

*GE Lighting Sols., LLC v. Lights of Am., Inc.*,
  2015 U.S. Dist. LEXIS 102584 (N.D. Ohio Aug. 5, 2015)................................24

*Krippelz v. Ford Motor Co.*,
  667 F.3d 1261 (Fed. Cir. 2012)...........................................................................9

*Mass. Inst. of Tech. v. Abacus Software*,
  462 F.3d 1344 (Fed. Cir. 2006).........................................................................21

*Microsoft Corp. v. Multi-Tech Sys.*,
  357 F.3d 1340 (Fed. Cir. 2004)...........................................................................9

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
  134 S. Ct. 2120 (2014) ........................................................................ 10, 23, 25

*Nexus Display Techs. LLC v. Dell Inc.*,
  2015 U.S. Dist. LEXIS 126204 (E.D. Tex. Sep. 22, 2015)................................24

*Pall Corp. v. Hemasure Inc.*,
  181 F.3d 1305 (Fed. Cir. 1999).........................................................................10

*Phillips v. AWH Corp.*,
  415 F.3d 1303 (Fed. Cir. 2005).......................................................................8, 9

*Serverside Grp. Ltd. v. Tactical 8 Techs., L.L.C.*,
  927 F. Supp. 2d 623 (N.D. Iowa 2013)..............................................................14

*Southwall Techs., Inc. v. Cardinal IG Co.*,
  54 F.3d 1570 (Fed. Cir. 1995)...........................................................................13

*Typhoon Touch Techs., Inc. v. Dell, Inc.*,
  659 F.3d 1376 (Fed. Cir. 2011).........................................................................10

**Statutes**

35 U.S.C. § 112 .......................................................................................................10

**Other Authorities**

USPTO, Manual of Patent Examining Procedure (9th Ed., Rev. 07.2015) ..............4

**DISPUTED TERMS IN THE CONTEXT OF ASSERTED CLAIM 1**

1. An aquatic ladder for use on a dock or boat, comprising:

**a pair of substantially parallel, substantially vertical spaced support members,**

**each of said vertical spaced support members having upper and lower portions**,

the **upper portion formed as an inverted "U" shape and terminating at a distal upper end**,

the lower portion terminating at a proximal lower end,

the proximal lower ends extending substantially lower than the distal upper ends when the aquatic ladder is in an upright orientation such that said lower portions of said spaced support members contact a portion of a dock or boat on which said aquatic ladder is mounted;

a pair of spaced **sloped step support members** extending at an angle with respect to said vertical spaced support members,

each of said sloped step support members including upper and lower ends,

each said upper end being **rigidly affixed**, respectively, to one of the proximal lower ends of said vertical spaced support members,

the lower ends of said sloped step support members being **horizontally spaced** away from the proximal lower ends of said vertical spaced support members,

said sloped step support members being spaced from one another; and

a plurality of **relatively deep and relatively wide** substantially horizontal steps being mounted between said sloped step support members,

wherein each lower step of said horizontal steps is displaced both vertically and horizontally further from the point where said vertical spaced support members meet said sloped step support members than any preceding one of said horizontal steps above

iv

it;

wherein said pair of sloped step support members each comprise **front and rear members**,

said front members being spaced from said rear members,

said front members being attached to the front of said horizontal steps and said rear members being attached to the rear of said horizontal steps

and **wherein said contact between said vertical spaced support members against a dock or boat on which said ladder is mounted limits downward movement of said vertical spaced support members**,

and together with the angle at which said vertical spaced support members are attached to said pair of spaced sloped step support members, determine the angle between said pair of space sloped step support members and said dock or boat on which said ladder is mounted.

## INTRODUCTION

This case should have never been reopened. The case was stayed while the two patents in Plaintiff's original complaint – U.S. Patent Nos. 7,464,792 ("the 792 Patent") and 8,157,054 ("the 054 Patent"), both of which generally relate to aquatic ladders – were reexamined by the U.S. Patent and Trademark Office ("USPTO"). The 054 Patent did not make it out of reexamination. All of its claims were cancelled for being unpatentable in view of multiple combinations of prior art. The original claims of the 792 Patent, as they existed at the time this suit was filed, did not survive reexamination either. Plaintiff was forced to add significant limitations to Claim 1 and make arguments surrendering claimed subject matter in order to distinguish the invention from the prior art and obtain allowance of the presently-asserted claims.

Plaintiff's infringement allegations, particularly in view of the reexamination proceedings, are completely frivolous. That the accused "Easy Climb Ladder" does not infringe the 792 Patent as reexamined is clear. Rather than dismiss this case, however, Plaintiff has pursued a strategy of serving purposefully vague and internally-inconsistent infringement contentions and seeking overly-broad, ambiguous, and unsupported claim constructions for the surviving albeit narrowed 792 Patent. Indeed, because the accused product resembles the design disclosed in the 054 Patent, rather than that in the 792 Patent, Plaintiff has attempted to stretch what is left of the 792 Patent to cover the distinct features that appear only in the much-later-filed and now-cancelled 054 Patent.

But this puts Plaintiff in a bind. If the claims of the 792 Patent are as broad as

he says they are, then they are invalid many times over; they would be invalid for the same reasons and in view of the same prior art relied on by the USPTO to invalidate the 054 Patent; and they would be invalid for failing the written description requirement because the structures encompassed by such broad claims are not disclosed or supported anywhere in the earlier-filed 792 Patent.

In furtherance of this strategy, Plaintiff has proposed constructions that are unhelpful, use ambiguous terms that will confuse the jury, are inconsistent with the patent specification, and ignore limiting disclaimers made during the original prosecution and reexamination of the 792 Patent. Defendants' proffered constructions, on the other hand, are drawn from, and faithful to, the 792 Patent and the intrinsic evidence, and are supported by reliable extrinsic evidence. Defendants' constructions are also necessary to assist the jury in understanding the proper scope of the asserted claims.

## FACTUAL AND PROCEDURAL BACKGROUND

**The 792 Patent.** The 792 Patent generally relates to ladders used for boarding boats or for climbing onto docks (Ex. 1, 1:14-17).[1] The 792 Patent describes the alleged invention as an aquatic ladder that is easy to use by both people and pets (*id.*, 3:15-22). The stated idea was to "mak[e] the aquatic ladder much like a stable staircase" (*id.*, 5:24-25), with steps that slope downward and outward instead of extending straight downward from the dock or boat. Seeking to provide a ladder that

---

[1] This brief is accompanied by the Declaration of Coby S. Nixon ("Nixon Decl."). "Ex. ___" as used herein refers to the exhibits attached to the Nixon Decl. References to patent columns and lines are signified by the following shorthand: [Column No.] : [Line No.], *e.g.*, Column 1, lines 1-5 is shown by 1:1-5.

could also be easily stored when not in use, the alleged invention also includes features "whereby the ladder can swing up and out of the water" (*id.*, 3:56-63).

With reference to Fig. 1 (below), the patent specification describes the features of the very specific ladder Plaintiff claimed in the 792 Patent. The aquatic ladder 10 includes a pair of "substantially parallel, substantially vertical spaced support members" 20, 22 (red), a pair of "spaced sloped step support members" 42, 44 that each have "front members" 46, 50 (blue) and "rear members" 48, 52 (green); and a series of "relatively deep and relatively wide substantially horizontal steps" 30, 32, 34 (yellow).

**792 Patent, Fig. 1 (Annotated)**



A few of Plaintiff's design choices are worth noting here. *First*, the vertical support members (red) "extend downward toward, or into, the water" such that they "contact the hull or transom of the boat or side wall of the dock with which the aquatic ladder is being used" (Ex. 1, 3:23-28). *Second*, the sloped step support members (blue and green) are "rigidly affixed" to, and "extend at an angle" from,

the lower ends of the vertical support members (*id.*, Claim 1). *Third*, the upper portions of the vertical support members (having "an inverted 'U' shape") are attached to the boat/dock at their far ends using hinges 14, 16 (*id.*, 4:15-29).

As a result of these design choices, *the entire aquatic ladder* may be swung up and out of the water when not in use, as shown in Fig. 1 using phantom lines (*id.*, 4:18-22; 5:52-54). When swung down, the contact between *the vertical support members* and the boat or dock limits the downward movement of *the vertical support members* (including the inverted "U" shaped portions) and prevents the ladder from swinging under the dock/boat (*id.*, 3:32-37; 5:41-45). Further, such contact, together with *the fixed angle between the vertical support members and the sloped support members* (*e.g.*, the connection between such members is not hinged) determines the angle between the sloped support members and the dock/boat, thereby maintaining the ladder in a staircase configuration (*id.*, 3:32-37; 5:41-45; Claim 1).

**Plaintiff's Family of Patents.** In addition to filing for the 792 Patent, Plaintiff has filed for other, related patents that disclose and claim other ladder designs. Plaintiff filed for his related patents as a series of "continuation-in-part" applications, thus adding new features in each successive application.[2]

*The 049 Patent.* Plaintiff's first application issued as U.S. Patent No. 7,090,049 ("the 049 Patent"). The 049 Patent discloses an aquatic ladder

---

[2] *See* USPTO, Manual of Patent Examining Procedure (9th Ed., Rev. 07.2015) § 201.08 ("A continuation-in-part is an application filed during the lifetime of an earlier nonprovisional application, repeating some substantial portion or all of the earlier nonprovisional application *and adding matter not disclosed in the said earlier nonprovisional application*.") (Emphasis added.)

substantially similar to that in the 792 Patent, but with the vertical support members extending farther downward and indirectly connecting to the lower portions of the sloped support members via horizontal supports (Ex. 2, Fig. 1, 4:28-35).

_The 792 Patent._ Plaintiff's second application issued as the asserted 792 Patent. As compared to the 049 Patent design, the 792 Patent design has vertical support members that "are relatively short, extending downward toward, or into, the water 18, but not extending downward as far as the lower step 30" (Ex. 1, 5:1-4).

_The 054 Patent._ Plaintiff's third application – filed _over three years after_ the application for the 792 Patent – issued as the formerly-asserted 054 Patent. The 054 Patent discloses an entirely different ladder that is "specifically adapted for use on a swim platform 102 of a boat" (Ex. 3, 5:37-40). With reference to Figs. 3 and 4 (below), the 054 Patent explains that "[t]he ladder 100 differs from those previously described" in Plaintiff's 049 and 792 Patents in that the hinges 104, 106 are provided in a different location (namely, between a pair of "U shaped handrails" 108 and the sloped support members 116, 118), "which enable[s] _the lower portion_ 110 of the ladder 100 to be swung up, out of the water" (_id._, 5:40-45) (emphasis added). Further, "[i]n the present embodiment, the upper portions 122 of the rear sloped members 118 are curved or bent," such that they connect to the upper portions of the front sloped members 116 at the hinges 104 (_id._, 5:52-55).

**054 Patent, Figs. 3 and 4 (Annotated)**



As a result of these *new* design choices, the 054 Patent ladder allows only the lower portion of the ladder to swing up for storage or down for use (not the entire ladder like in the 792 Patent). Moreover, it is contact with the lower sloped support member (not with a vertical support member like in the 792 Patent) that prevents the ladder from swinging under the swim platform. Further, such contact alone determines the angle between the sloped support members and the swim platform (due to the newly revised placement of the hinges, the sloped support members are not at a fixed angle with any vertical support members like in the 792 Patent).

*The 643 Patent.* Plaintiff's fourth and final application issued as U.S. Patent No. 8,720,643 ("the 643 Patent") (Ex. 4).

**The Reexamination Proceedings.** Plaintiff originally asserted both the 792 and 504 Patents (Dkt. 1 & 12). In November, 2012, the USPTO initiated *ex parte* reexamination proceedings against both patents to evaluate the validity of their claims as originally issued (Dkt. 36 & 38). In February, 2013, the Court granted

Defendants' motion to stay this action pending their conclusion (Dkt. 43).

For the 792 Patent, the USPTO allowed independent Claim 1 and dependent Claims 2-8 to issue in a Reexamination Certificate, but only after Plaintiff added significant limitations to Claim 1 (Ex. 5).[3] Specifically, Plaintiff added claim limitations to affirmatively require that (i) the lower portions of the *vertical* support members contact the boat/dock; (ii) such contact limits the downward movement of the vertical support members (not just the lower portion of the ladder); and (iii) such contact, together with the angle at which the vertical support members are attached to the sloped support members determines the angle between the sloped support members and the dock/boat (Ex. 6 at 2-3; Ex. 7 at 2-3; Ex. 5).

The 054 Patent, on the other hand, did not survive reexamination. The USPTO ultimately concluded that the claims of the 054 Patent were unpatentable in view of various combinations of prior art references (Ex. 8 at 7-21). The USPTO thus cancelled all claims of the 054 Patent (Ex. 9).

**The Accused Product.** On October 9, 2014, the Court issued an order reopening this case, but limiting Plaintiff's allegations to those involving the claims set forth in the Reexamination Certificate for the 792 Patent (Dkt. 45). Plaintiff now accuses the "Easy Climb Ladder" of infringing Claims 1-4 of the 792 Patent (*see* Exs. 20 and 21). As shown below, however, the Easy Climb Ladder includes design features (such as the location of a hinged connection and the point of contact with a

_____

[3] The USPTO also allowed new claims 9-11, which Plaintiff added to the 792 Patent during reexamination, but none of these claims are being asserted in this litigation.

dock) that are similar (though not identical) to the features that Plaintiff first disclosed in the later-filed 054 Patent and that the USPTO deemed unpatentable.

| Accused Product | Fig. 3 of the 054 Patent |
|---|---|
|  | |

## LEGAL PRINCIPLES

**Claim Construction.** The Federal Circuit's decision in *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (*en banc*) comprehensively sets forth the controlling claim construction principles. As a starting point, "the claims themselves provide substantial guidance as to the meaning of particular claim terms." *Id.* at 1313. For example, "the context in which a term is used in the asserted claim can be highly instructive." *Id.* Because claims do not stand alone, they must also be read in view of the specification. *Id.* at 1315. The specification "is always highly relevant to the claim construction analysis" and will usually be dispositive. *Id.* (internal quotations omitted). As a result, the specification "is the single best guide to the meaning of a disputed term." *Id.* (internal quotations omitted).

The court should also consider the patent's prosecution history, which consists of the complete record of the proceedings before the USPTO and includes the prior

art cited during the examination of the patent. *Id.* at 1317. Like the specification, "the prosecution history was created by the patentee in attempting to explain and obtain the patent." *Id.* Notably, statements made (i) during the prosecution of, or in the specification of, related applications (including later-filed applications) and (ii) during reexamination can prove useful in determining the meaning of the claims. *See Microsoft Corp. v. Multi-Tech Sys.*, 357 F.3d 1340, 1350 (Fed. Cir. 2004) (construing terms in an earlier issued patent based on statements made during the prosecution of a later patent); *Cummins-Allison Corp. v. Glory Ltd.*, 457 F. Supp. 2d 843, 850 (N.D. Ill. 2006) (construing claims based on statements made in the specification of a later-filed, continuation-in-part patent); *Krippelz v. Ford Motor Co.*, 667 F.3d 1261, 1266 (Fed. Cir. 2012) ("A patentee's statements during reexamination can be considered during claim construction, in keeping with the doctrine of prosecution disclaimer.").

The court may also rely on extrinsic evidence, which "consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." *Phillips*, 415 F.3d at 1317. Dictionaries may prove useful because they may help the court to understand "the way in which one of skill in the art might use the claim terms." *Id.* at 1318.

Finally, it is entirely appropriate for a court to consider the accused product when construing claim terms, "for the purpose of 'claim construction' is to resolve issues of infringement." *Typhoon Touch Techs., Inc. v. Dell, Inc.*, 659 F.3d 1376,

1383 (Fed. Cir. 2011) (citing *Pall Corp. v. Hemasure Inc.*, 181 F.3d 1305, 1308 (Fed. Cir. 1999) ("Although the construction of the claim is independent of the device charged with infringement, it is convenient for the court to concentrate on those aspects of the claim whose relation to the accused device is in dispute.").

**Indefiniteness.** The Patent Act requires that a patent specification "conclude with one or more claims *particularly pointing out and distinctly claiming* the subject matter which the applicant regards as his invention." 35 U.S.C. § 112, ¶ 2 (emphasis added). A patent claim that fails to satisfy this requirement is indefinite and invalid. *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2124 (2014).

In *Nautilus*, the Supreme Court clarified the indefiniteness standard, holding that a claim is indefinite if its language, when read in light of the specification and the prosecution history, "fail[s] to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Id.* The Court explained that "a patent must be precise enough to afford clear notice of what is claimed, thereby apprising the public of what is still open to them." *Id.* at 2129. Failure to give clear notice about the scope of the invention creates "a zone of uncertainty which enterprise and experimentation may enter only at the risk of infringement claims." *Id.*

### ARGUMENT

Plaintiff asserts Claims 1-4 of the 792 Patent (as reexamined) against Defendants. Claims 2-4 each depend from independent Claim 1 and thus include all the limitations of Claim 1. On pages *iv-v*, above, the disputed claim terms are highlighted (using bold and underlining) within the full text of Claim 1 for context.

The disputed terms and the parties' proposed constructions are set out below as found in the parties' Joint Claim Construction Statement ("JCCS") (Dkt. 90).

## I. Each "Vertical Spaced Support Member" is Comprised of a Single Continuous Component.

| Claim Term | Plaintiff | Defendants |
|---|---|---|
| "a pair of substantially parallel, substantially vertical spaced support members, each of said vertical spaced support members having upper and lower portions" (Claim 1) | two support members[4] that are each substantially vertical and each of which has an upper and lower portion | vertical support members, each member comprised of a single continuous component having an upper portion and a lower portion |
| "support members" (Claim 1) | those parts of the ladder that are intended to be connected to both upper handrails and lower rung supports | (Defendants contend that the entire phrase should be construed.) |

The entire disputed phrase above introduces the elements "vertical spaced support members," which are referenced later in Claim 1 multiple times. The parties' dispute centers on whether one of ordinary skill in the art would understand the words "support *members* having upper and lower *portions*" – in the context of Plaintiff's alleged invention – to refer to single, continuous components or be broad enough to encompass discontinuous components separated by, *e.g.*, a hinge (as in Plaintiff's later-conceived 054 Patent ladder). As shown below, the broader interpretation is contrary to all the intrinsic evidence.

**The Claim Language.** Defendants' construction is supported by the words in the disputed phrase, as well as the other language in Claim 1. For example, use of the words "members" having "portions" (parts of a whole) suggests a pair of continuous, not separate, components. Indeed, the disputed phrase uses the word

---

[4] Plaintiff proposes a separate construction for the term "support members" that is set out immediately below.

"pair," meaning two components, rather than four as Plaintiff's construction might allow. Claim 1 also recites that the upper portion "terminat[es] at a distal upper end" and the lower portion "terminat[es] at a proximal lower end." No other termination points or ends are mentioned. Further, the claim recites that the proximal lower ends are "extending" substantially lower that the distal upper ends. Such language indicates to one of ordinary skill that each vertical spaced support member is a single continuous component extending from its distal upper end to its proximal lower end.

**The Specification.** The specification likewise supports Defendants' construction by emphasizing that, "[i]n order to accomplish [the Plaintiff's] design objectives, *the aquatic ladder of the present invention* includes a pair of substantially parallel, substantially vertical members which *extend downward toward*, or into, the water" (Ex. 1, 3:23-26); "are designed to *hang down toward*, or into, the water 18" (4:24-26); and "are relatively short, *extending downward toward*, or into, the water 18" (5:2-3). (Emphases added.) Use of the words "extend," "hang down," and "extending" would be strange if attempting to refer to separate, discontinuous components. Moreover, Figures 1 and 2 show the vertical support members (as well as the sloped "support members") as comprising single continuous components.

**The File History.** Defendant's construction is compelled by the prosecution history. During the original prosecution of the 792 Patent, the USPTO rejected pending claims that recited discontinuous vertical support members as failing to comply with the enablement requirement (Ex. 10 at 3). Claim 1 as then-pending

recited (i) "vertical spaced support members" and (ii) "vertical supports" each having "an upper end" attached to one of the vertical spaced support members (Ex. 11 at 15). The examiner found, however, that the patent disclosure "*is silent on the vertical supports as having any upper ends*, or the upper ends being attached to the spaced support members. *In fact, the spaced support members -- being continuous with the vertical supports* – are attached to the upper portions, and not the upper ends of the vertical support" (Ex. 10 at 3 (emphasis added).)

In response, Plaintiff amended Claim 1 to eliminate the "vertical supports" elements and recite that a pair of upper railings form the "upper *portion*" of each vertical spaced support member (Ex. 12 at 2).[5] Moreover, Plaintiff conceded that "the Examiner was entirely correct that there were a number of ambiguities resulting in confusing terminology in the Claims, as compared to the specification and drawings" and explained that "Claim 1 has been amended to provide consistency between the language in the Claims and the language in the specification" (*id.* at 5).

In view of Plaintiff's amendments and arguments, the file history requires that the vertical spaced support members be construed to each comprise "a single continuous component." *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1576 (Fed. Cir. 1995) ("The prosecution history limits the interpretation of claim terms so as to exclude any interpretation that was disclaimed during prosecution.").

**Plaintiff's Proposed Constructions.** Plaintiff's proposed constructions (for

---

[5] Claim 1 was later revised by an Examiner's amendment to include the disputed phrase at issue (Ex. 13 at 2-3).

both the full claim phrase and the term "support members") are simply not helpful. Plaintiff's proposed construction for the entire phrase merely repeats many of the words used in the phrase, rendering it circular and adding nothing in the way of clarity. *Serverside Grp. Ltd. v. Tactical 8 Techs., L.L.C.*, 927 F. Supp. 2d 623, 659 (N.D. Iowa 2013) (rejecting construction of "secure unique identifier" as "unique identifier which is secure" because it failed to clarify the meaning of the term).

Further, Plaintiff's proposal to separately construe the term "support members" should be rejected for several reasons. *First*, the term "support members" is used elsewhere in Claim 1 when referring to the "sloped step support members" and Plaintiff's proposed construction does not work in both instances. *Second*, Plaintiff's construction refers to structural elements ("upper handrails" and "lower rung supports") that are not recited in the claims, thereby introducing troublesome ambiguity.[6] *Third*, by referring to parts "intended to be connected to" other elements, Plaintiff's construction would import subjective intent into the claim, which has no basis in the claim term itself ("support member" has no subjective element) and may render Claim 1 invalid for indefiniteness. *3M Co. v. Avery Dennison Corp.*, No. 10-2630, 2012 U.S. Dist. LEXIS 39895, at *18-20 (D. Minn. Mar. 22, 2012). *Fourth*, Plaintiff's construction could potentially cover discontinuous components separated by a hinge, which is subject matter that was expressly disclaimed during prosecution and, in the context of the later-disclosed 054 Patent design, held unpatentable.

---

[6] Plaintiff's reference to "lower rung supports" directly contradicts the specification, which describes "the present invention" as not including rungs (Ex. 1, 3:48-50).

14

## II.    "'U' Shape" Means Precisely the Shape Illustrated by the Letter "U."

| Claim Term | Plaintiff | Defendants |
|---|---|---|
| "upper portion formed as an inverted 'U' shape and terminating at a distal upper end" (Claim 1) | the upper portions of the two support members being formed as handles in an inverted "U" shape, with the upper portions terminating at a distal upper end | the upper portion of each vertical spaced support member consists of an inverted "U" shape, where the "U" shape is precisely the shape illustrated by the letter 'U' itself |

The parties' dispute over this claim term centers on the meaning of "'U' shape." The specification explains that each of the upper portions of the vertical support members "is preferably in the shape of an inverted 'U' so as to function as a hand railing" (Ex. 1, 4:26-29; Figs. 1 & 2 (showing "U" shaped elements 26, 28)).

**Plaintiff Deliberately Chose to Use Precise Language.** Plaintiff chose to claim the shape of such upper portions by using the precise language "formed as an inverted 'U' shape." This language is precise because the generally understood meaning of "U" in the structural context is "something shaped like the letter U" (Ex. 14 at 1280). Plaintiff could have used other language in the claims had he considered something other than the precise shape illustrated by the letter "U" to suffice as a hand railing for his claimed invention.

Indeed, qualifiers such as "substantially," "generally," "essentially," or "relatively," or other language such as "curved" or "bent" were certainly available to Plaintiff and he knew how to use them. *See* Ex. 1, 3:41-42 ("the upper portions included *substantially* inverted 'U' shaped portions"); 3:42-43 ("These *substantially* inverted "U" shaped portions …."); Claim 1 (reciting "a plurality of *relatively* deep and *relatively* wide *substantially* horizontal steps"); Ex. 3, 5:52-53 ("the upper portions 122 of the rear sloped members 118 are *curved or bent*") (Emphases

added.). Instead, Plaintiff used the precise term "'U' shape," without any qualifications, and even distinguished his invention from the prior art when it did not have an "inverted 'U' shaped" rail (Ex. 1, 2:50-51).

Perhaps most tellingly, when Plaintiff wanted to claim a shape that is not the precise shape illustrated by the letter "U," as he did in connection with the 643 Patent, he chose to include qualifying language. *See* Ex. 4, 8:12-13 (Claim 1 reciting "handrails having an inverted, *substantially* U-shape"); Fig. 7, (handrails 303).

**Plaintiff's Proposed Construction Should Be Rejected.** Plaintiff's construction will not assist the jury in determining the meaning of "'U' shape" and adds ambiguity by requiring that the upper portions be "formed *as handles* in an inverted 'U' shape" (emphasis added). Defendants' construction should be adopted because it helps the jury and is fully supported by the intrinsic and extrinsic evidence.

## III. The "Limits Downward Movement of the Vertical Spaced Support Members" Term Refers to the Vertical Spaced Support Members as a Whole, Not Just Their Lower Portions.

| Claim Term | Plaintiff | Defendants |
|---|---|---|
| "wherein said contact between said vertical spaced support members against a dock or boat on which said ladder is mounted limits downward movement of said vertical spaced support members" (Claim 1) | the downward movement of the lower end of the ladder is limited, whereby the ladder does not simply drop down vertically due to contact between the vertical members and the dock or boat on which the ladder is mounted | Contact occurs where horizontal forces occur between the vertical spaced support members and a dock or boat and the contact limits downward movement of the vertical spaced support members as a whole, including both the upper portions and the lower portions of the vertical spaced support members. |

| "contact between said vertical spaced support members against a dock or boat on which said ladder is mounted" (Claim 1) | that part, or those parts, of the support members that are intended to lie against a dock or boat on which the ladder is mounted, whereby further downward movement of the sloped support members is prevented, i.e., the part or parts that prevent the "sloped" supports from dropping down further than intended based on the angle to which the sloped support members are attached to them | (Defendants contend that the entire phrase should be construed.) |
|---|---|---|

This disputed term was added to Claim 1 during reexamination of the 792 Patent to distinguish the prior art. The term refers to certain contact against the boat/dock that limits downward movement. The parties dispute whether this term requires the contact to limit downward movement of (i) the *sloped* support members (or "lower end of the ladder"), as Plaintiff proposes, or (ii) the *vertical* support members (including both their upper U-shaped portions and lower portions), as Defendants' propose.

**The Claim Language Is Unambiguous.** Whereas Defendants' proposed construction is derived from the claim language itself, Plaintiff's construction is directly contradicted by it. The disputed claim term expressly recites that the contact "limits downward movement *of said vertical spaced support members*" (emphasis added). Claim 1 further defines the "vertical spaced support members" as "having upper and lower portions," wherein each of the upper portions are "formed of an inverted 'U' shape." Accordingly, the disputed term clearly means that the contact "limits downward movement of the vertical spaced support members as a whole, including both the upper portions and the lower portions."

17

Plaintiff, on the other hand, seeks to rewrite the disputed term such that the claimed contact limits downward movement of "the lower end of the ladder," "the sloped support members," and/or "the 'sloped' supports." There is simply no support in the language of Claim 1 for such a construction. Plaintiff's construction is also improper for attempting to import subjective intent into the claim. *3M Co.*, 2012 U.S. Dist. LEXIS 39895, at *18-20.

**The Specification Supports Defendants' Construction.** The specification discloses that the ladder design of Claim 1 places hinges at the far end of the vertical support members, thereby allowing the entire ladder, including the vertical support members, to swing up and down. *See* Ex. 1, 4:18-21 ("The brackets 14, 16 . . . allow the aquatic ladder 10 to be swung up and out of the water"); Fig. 1 (showing the entire ladder swung upward using phantom lines). As a natural result, the downward movement of the entire ladder, including the vertical support members as a whole, will be limited once the vertical support members contact the boat/dock.[7] Further, Figure 1 shows that when the ladder is swung down in an arc for use, the contact that limits downward movement occurs where horizontal forces occur between the vertical support members and the dock/boat.

**The Reexamination File History is Dispositive.** During reexamination, Claim 1 stood rejected in view of U.S. Patent No. 5,333,323 to Aymes ("Aymes") (*see* Ex. 15, Fig. 1 (below)), which disclosed a prior art ladder having hinges that, in

_____

[7] Indeed, Plaintiff did not conceive of a ladder design that allowed just the sloped support members to swing up and down until the design of the later-filed 054 Patent that was deemed unpatentable.

Plaintiff's words, "could be used to hingedly swing *the lower portion of the ladder* 12 out of the water …." (Ex. 16 at 9) (emphasis added). Further, the downward movement of the lower portion of the Aymes ladder was limited by *vertical* contact between plates on the bottom of the ladder and the bottom of the pool (*id.* at 10).

**Aymes, Ex. 15, Fig. 1**



Consequently, Plaintiff added this disputed phrase to Claim 1 to distinguish the aforementioned features of Aymes and expressly require (i) horizontal contact between the vertical spaced support members and a dock/boat and (ii) that such contact limit downward movement of the vertical spaced support members (not just the lower portion of the ladder like in Aymes). Defendants' proposed constructions account for these limiting amendments, and should therefore be adopted.

## IV.   The Term "Rigidly Affixed" Refers to Two Separate Components that are Immovably Attached or Immovably Fastened Together.

| Claim Term | Plaintiff | Defendants |
|---|---|---|
| "rigidly affixed" (Claim 1) | the parts are not intended to separate in the normal use of the ladder | two separate component pieces immovably attached or fastened together |

This disputed term is used in Claim 1 to define the connection between the upper end of each sloped support member and the proximal lower end of a vertical

19

support member. Although Plaintiff's infringement contentions are unclear (*see* Ex. 21 at 8), Plaintiff appears to seek an overly broad construction that would encompass a bent portion of a single continuous component and/or a hinged connection between separate components (as in the later-filed 054 Patent design). Defendants contend that "rigidly affixed," in view of both the intrinsic and extrinsic evidence, refers to an immovable connection between two separate component pieces.

**The Claim Language Requires An Immovable Connection.** Claim 1 requires that the sloped support members be "rigidly affixed" to the vertical support members. Claim 1 also recites that the sloped support members are "extending at an angle with respect to" the vertical support members. Claim 1 further requires that "the angle at which said vertical spaced support members are attached to said pair of spaced sloped support members" helps to determine the angle between the sloped support members and the dock/boat. Such language makes clear that "rigidly affixed" must mean a connection whereby the component pieces are immovable relative to one another, else the sloped support members could move relative to the vertical support members and swing under the boat/dock contrary to the stated objective of Plaintiff's alleged invention (Ex. 1, 5:41-45).

**The Specification Supports Defendants' Construction.** While the specification does not define the term "rigidly affixed," it refers to "bolting or welding" (*i.e.*, immovable connections) as examples of "affix[ing]" two separate component pieces to one another (Ex. 1, 4:55-56). The specification also shows that

the connection between the upper ends of the sloped support members and the lower ends of the vertical support members is a rigid, immovable connection (*id.*, Fig. 1 (sloped support member 48 rigidly affixed to vertical support member 20)).

**The Extrinsic Evidence Confirms Defendant's Construction.** The words "rigidly" and "affixed" are common words with no particularized meaning in the art of aquatic ladders. The ordinary meaning of "rigid" is "deficient in or devoid of flexibility," as in "a [rigid] bar of metal" (Ex. 14 at 1009). The ordinary meaning of "affix" is "attach or fasten to something else" (Ex. 17). Because such definitions track how the Plaintiff used the term "rigidly affixed" in the specification, the extrinsic evidence confirms that this term requires that two separate component pieces be immovably attached or immovably fastened together. *Mass. Inst. of Tech. v. Abacus Software*, 462 F.3d 1344, 1351 (Fed. Cir. 2006) (construing "scanner" using dictionary definitions consistent with use of the term in the patent specification).

**Plaintiff's Proposed Construction Is Impermissibly Broad.** Plaintiff proposes that "rigidly affixed" means "the parts are not intended to separate in the normal use of the ladder." There is simply no support for such a broad construction. Indeed, one could attach parts together using rubber bands and/or duct tape and not intend them to separate during normal use. The plain and ordinary meaning of "rigidly affixed" is certainly more restrictive than that. In addition, Plaintiff's construction should be rejected for yet again seeking to import a subjective intent

element into the claims. *3M Co.*, 2012 U.S. Dist. LEXIS 39895, at *18-20.

## V. The Terms "Sloped Step Support Members" and "Front and Rear Members" Do Not Require Construction.

| Claim Term | Plaintiff | Defendants |
|---|---|---|
| "sloped step support members" (Claim 1) | the parts of the ladder to which the step-like rungs are attached | (Plain and ordinary meaning.) |
| "front and rear members" (Claim 1) | the parts of the sloped step support members to which the steps are attached | (Plain and ordinary meaning.) |

No construction is needed for these terms because the claim language itself provides sufficient context for the jury. The claim language recites that the steps of the ladder are "mounted between said sloped step support members." Plaintiff's construction, that the "sloped step support members" are "the parts of the ladder to which the step-like rungs are attached," is thus redundant and not helpful. Likewise, Claim 1 recites that "said front members being attached to the front of said horizontal steps and said rear members being attached to the rear of said horizontal steps." Plaintiff's construction, that "front and rear members" be defined as "the parts of the sloped step support members to which the steps are attached" adds nothing.

If Plaintiff's constructions add anything, it is ambiguity. It will not be clear to the jury what Plaintiff means by "step-like" and the reference to "rungs" is ambiguous because the term is never used in the claims. Consequently, Plaintiff's constructions should be rejected as incorrect and unwarranted.

## VI. The Terms "Horizontally Spaced" and "Relatively Deep and Relatively Wide" are Indefinite Because Their Scope Cannot Be Determined with Reasonable Certainty.

| Claim Term | Plaintiff | Defendants |
|---|---|---|
| "horizontally spaced" (Claim 1) | the relevant parts are not directly vertically displaced from one another, i.e., one of the parts does not directly overlie the other | (Indefinite.) |
| "relatively deep and relatively wide" (Claim 1) | the rungs of the ladder are "step-like" in nature | (Indefinite.) |

When a term of degree is used in a claim, "the court must determine whether the patent provides some standard for measuring that degree." *Biosig Instruments, Inc. v. Nautilus, Inc.*, 783 F.3d 1374, 1378 (Fed. Cir. 2015) (quotation marks omitted). Here, Claim 1 uses terms of degree to define (i) the spatial relationship ("horizontally spaced") between the lower ends of the sloped support members and the proximal lower ends of the vertical support members and (ii) the dimensions of the steps ("relatively deep and relatively wide"). Because the intrinsic evidence fails to provide a standard for determining the bounds of these terms, the public is left without clear notice as to whether a given aquatic ladder falls within the scope of the invention. As such, Claim 1 is indefinite.

**"Horizontally Spaced."** This claim term is directed to a crucial aspect of Plaintiff's alleged invention. The term refers to the horizontal spacing that causes the steps to be "arranged in a staircase manner" (Ex. 1, 4:31), making entry into and exit from the water easy for people and pets (*id.*, 5:18-19). Without such horizontal spacing, the aquatic ladder would simply hang down vertically like a "pool ladder," a configuration that Plaintiff distinguished during reexamination (Ex. 16 at 11).

Despite the term's importance, the intrinsic evidence fails to provide any objective boundary for how much horizontal spacing is sufficient to fall within the claims. *Nautilus*, 134 S. Ct. at 2129 ("[A] patent must be precise enough to afford clear notice of what is claimed, thereby apprising the public of what is still open to them.") Under Plaintiff's construction, any horizontal spacing, no matter how

minimal, would be sufficient. But a minimally-sloped ladder would not make entry into or exit from the water any easier than a vertical ladder. *See* Ex. 18 at 13 (arguing during reexamination of the 054 Patent that a prior art ladder having a slope of 10 degrees from vertical does not have a "step-like slope" and is "impossible to climb 'hands free'"). Because the bounds of this claim term cannot be determined with any reasonable certainty, Claim 1 is indefinite. *GE Lighting Sols., LLC v. Lights of Am., Inc.*, No. 1:12-cv-3131, 2015 U.S. Dist. LEXIS 102584, at *32-34 (N.D. Ohio Aug. 5, 2015) (holding that "elongated" was indefinite where patentee distinguished the prior art for not including an "elongated core," but "did not point to any description or support in the patent specification or explain the scope of 'elongated'").

**"Relatively Deep and Relatively Wide."** This claim term is also crucial because it seeks to distinguish the steps of the alleged invention from the "rungs" used in prior art aquatic ladders. *See* Ex. 1, 3:48-50 ("The aquatic ladder of the present invention further includes relatively deep, horizontal steps, rather than the thin, or round, rungs heretofore in general use."). But, once again, the intrinsic evidence fails to apprise one of skill in the art about the scope of the term.

Although the specification provides one set of exemplary measurements (*id.*, 4:32-36), the intrinsic evidence fails to disclose any objective boundaries for what qualifies as "relatively deep" or "relatively wide." *Nexus Display Techs. LLC v. Dell Inc.*, No. 2:14-CV-762, 2015 U.S. Dist. LEXIS 126204, at *27-31 (E.D. Tex. Sep. 22, 2015) (finding term of degree, "closely matching the auxiliary data rate," to be

indefinite where the specification and prosecution history "fail[ed] to provide objective boundaries for determining whether a data rate 'closely matche[s]' another data rate"). Moreover, Plaintiff's proposed construction adds to the indefiniteness by referring to "rungs," which are what the claim term is intended distinguish, and by using the completely ambiguous term "step-like."[8] Because "relatively deep and relatively wide" creates precisely the type of "zone of uncertainty" that the Supreme Court warned against in *Nautilus*, 134 S. Ct. at 2129, Claim 1 is indefinite.

## VII. Plaintiff's Proposal to Construe "Aquatic Ladder Adapted for Marine Applications" Should Be Denied Because This Language Is Not Used in Any Asserted Claim.

| Claim Term | Plaintiff | Defendants |
|---|---|---|
| "aquatic ladder adapted for marine applications" | a ladder that is constructed of a material that can be used when wet | (This is not a claim term and no definition is required.) |

There is no justifiable, much less rational, reason to construe this term. Claim 1, as reexamined, recites "[a]n aquatic ladder *for use on a dock or boat*" (emphasis added). The phrase "aquatic ladder *adapted for marine applications*" is not used in any of the claims of the 792 Patent. Thus, the jury can decide the issues of non-infringement and invalidity without having Plaintiff's proposed phrase construed.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court adopt their proposed constructions and conclude that the terms "horizontally spaced" and "relatively deep and relatively wide" are indefinite pursuant to 35 U.S.C. § 112.

---

[8] The Examiner found the similar term "staircase like" to be "ambiguous" and stated that it would "invoke rejections under 35 U.S.C. § 112" (Ex. 19 at 2).

This 3rd day of February, 2016.

                    Respectfully submitted,

                    */s/ W. Scott Creasman*
                    Jeffrey R. Kuester
                    Georgia Bar No. 429960
                    W. Scott Creasman
                    Georgia Bar No. 194860
                    Coby S. Nixon
                    Georgia Bar No. 545005
                    Seth K. Trimble
                    Georgia Bar No. 851055
                    **TAYLOR ENGLISH DUMA LLP**
                    1600 Parkwood Circle, Suite 400
                    Atlanta, Georgia  30339
                    Telephone:  (770) 434-6868
                    Facsimile:   (404) 434-7376
                    Email: jkuester@taylorenglish.com
                    Email: screasman@taylorenglish.com
                    Email: cnixon@taylorenglish.com
                    Email: strimble@taylorenglish.com

                    Attorneys for Defendants

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing pleading was prepared using Times New Roman, 14-point, and otherwise conforms to the requirements of Local Rule 5.1.

/s/ *W. Scott Creasman*
W. Scott Creasman
Georgia Bar No. 194860
Attorney for Defendants


## CERTIFICATE OF SERVICE

I hereby certify that on February 3, 2016, I electronically filed the foregoing DEFENDANTS' OPENING CLAIM CONSTRUCTION BRIEF with the Clerk of the Court using the CM/ECF system which will automatically send e-mail notification of such filing to counsel of record.

/s/ *W. Scott Creasman*
W. Scott Creasman
Georgia Bar No. 194860
Attorney for Defendants